*Southern District*
### WOODS HOLE, MARTHA'S VINEYARD & NANTUCKET STEAMSHIP AUTHORITY
v.
### NANTUCKET EXPRESS LINES, INC. & ISLAND STEAMSHIP LINES, INC.

*Present*: Nash, C.J., Cox & Owen, JJ.

Case tried to *Driscoll, J.* in the First District Court of Barnstable No. 21367.

*Cox, J.* In this action of contract by the plaintiff to recover from the defendants the license fee due for the 1963 summer season, the defendants filed a declaration in set-off for the recovery of fair and reasonable compensation for the use by the Authority of the defendants' vessel the M. V. Martha's Vineyard, on July 13 and 14, 1963.

The justice found for the Authority in the sum of $8827.82 and for the Lines, plaintiffs in set-off, in the sum of $3500.00.

The only matter before us for consideration is the contention of the Lines that the amount of $3500.00 awarded for the use of the vessel is not adequate on the evidence. The finding of $8827.82 for the Authority is not in dispute.

The justice had rightly ruled that the Lines are entitled to fair and reasonable compensation for the use of the vessel. He denied a request, *No.* 4, that the amount as matter of law had been determined to be $6700.00 by the parties, and *No.* 5, that as matter of law the Lines owed the Authority nothing, the Lines' contention being that the amount of $6700.00 referred to in *No.* 4, a payment of $1000.00 and $2127.82 deposited in escrow by the Lines in a bank to await the court's order, balanced the amount of $9827.82 due the Authority for 1963. The justice allowed so much of *No.* 6 as stated that $2127.82 was deposited in escrow and denied that portion which requested the ruling that no further sum was then payable under the license agreement.

The justice made no special findings.

By virtue of the provisions of St. 1960, c. 701, §5 (last paragraph), the Authority had licensed the Lines to operate the M. V. Martha's Vineyard between Hyannis and the Islands. The license fee was seven and one-half per cent of the gross receipts by the Lines during the summer season. In 1963 the amount of the license fee so computed was $9827.82. The payment of $1000.00 by the Lines had reduced the amount due for the license fee to $8827.82, the amount of the finding.

The only witness was Joseph T. Gelinas, President of Nantucket Express Lines, Inc., who testified that during the evening of July 11, 1963 the Authority's general manager called him on the telephone to say that the Authority was in a jam and requested that the vessel report at Woods Hole at five o'clock the next morning for emergency service. He testified that the general manager told him not to worry about expense, that the Authority would pay a fair price for the use of the vessel. The vessel was taken off its regular run and put in service for sixteen hours on July 13 and sixteen hours on July 14. He further testified that this operation was equivalent to three days of operation. In his opinion fair compensation for the use of the vessel was $2000.00 per day, $6000.00 for the time the ship was used being the equivalent of three days. He testified that the Authority's general manager on July 15 authorized him to deduct from the license fee what was due for the use of the vessel. As a result of a further conversation with the general manager, Mr. Gelinas sent a bill to the Authority for $6700.00 and was later told by the general manager that "Everything is being taken care of. Don't worry about it."

On cross examination Mr. Gelinas testified that the vessel operates a maximum of seventy days each season. The average daily income was $1870.00. The best daily return was about $4400.00. In his opinion, $3350.00 per day for July 13 and 14, 1963, was a rea-

sonable charge having in mind the time of year and overtime which he paid. However, he admitted that about $2500.00 had been the best weekend income from the operation of the vessel.

The Lines, in the brief in their behalf, recognized that the sum of $3500.00 found by the judge is not unreasonable for the use of the vessel for two days. Their contention is that on the evidence an award should have been made for three instead of two days.

We cannot say on the record before us that a finding based on three days for the higher price testified to by Mr. Gelinas was required. In our opinion there was evidence to warrant the assessment of $3500.00 as fair and reasonable compensation for the use of the vessel for the two days of July 13 and 14. Mr. Gelinas admitted that approximately $2500.00 for a weekend was the Lines' best income experience. A weekend would be no less than two days. The justice assessed for those two days' use $3500.00 or $1000.00 more than the best weekend of operation.

"The amount of damages seldom can be proved with the exactness of mathematical demonstration. Much must be left to estimate and judgment, sometimes upon meager evidence." *Carlo Bianchi & Co. Inc. v. Builders' Equipment & Supplies Co.,* 347 Mass. 636, 646. The justice was not obliged to believe other testimony of Mr. Gelinas that fair compensation for the use of the vessel exceeded the amount of the finding. *Zar-*

*rillo v. Stone,* 317 Mass. 510. *Perry v. Hanover,* 314 Mass. 167, 170. *Lydon v. Boston Elevated Railway,* 309 Mass. 205, 206.

We think the finding is supported by the evidence and that there was no prejudicial error in denying the request for rulings. They were not required. *Perry v. Hanover,* 314 were in effect requests for findings which Mass. 167, 169-170.

*An order should be entered dismissing the report.*

Francis W. Keating of Falmouth for the Plaintiff and Defendant, in set-off.

Roger F. Turner of Milton for the Defendant and Plaintiff, in set-off.